IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**MARILYN BEECH**     **PLAINTIFF**

vs.     **CIVIL ACTION NO. 2:09CV180-P-A**

**MICHAEL ASTRUE,**
**Commissioner of Social Security**     **DEFENDANT**

## MEMORANDUM OPINION

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Marilyn Beech for supplemental security income payments under Section 1614(a)(3) of the Social Security Act. Plaintiff filed an application for supplemental security income ("SSI") on April 3, 2006 alleging disability beginning on March 1, 2000. Plaintiff's claim was denied initially on October 6, 2006, and upon reconsideration on March 26, 2007. She filed a request for hearing on April 17, 2007. She was represented by counsel at the hearing on February 18, 2009. The Administrative Law Judge (ALJ) issued an unfavorable decision on April 9, 2009, and on August 27, 2009, the Appeals Council denied plaintiff's request for a review. Plaintiff timely filed the instant appeal from the ALJ's most recent decision, and it is now ripe for review.

### I. FACTS

Plaintiff was born on November 16, 1965, and completed the twelfth grade. (Tr. 26-27). She was 43 years old at the time of the ALJ's decision. (Tr. 19). Plaintiff does not have any past relevant work and has not worked since she was released from prison in March of 2006. (Tr. 28). She previously applied for and received SSI, but lost her benefits when she was incarcerated in 1999 for forging her mother's checks. (Tr. 69, 176, 227) (Docket 9, p. 4).

Plaintiff contends that she became disabled before her application for SSI as a result of diabetes, hypertension, eye problems, obesity, panic attacks, asthma, depression, and chronic lower back pain. (Docket 9, p. 4).

The ALJ determined that plaintiff suffered from "severe" impairments including "diabetes, obesity, peripheral neuropathy, asthma, disorder of the back and hip, substance abuse disorder, personality disorder and bipolar disorder" (Tr. 12), but that these impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20CFR 416.925 and 416.926). (Tr. 13). Based upon testimony by the vocational expert [VE] at the hearing and upon consideration of the record as a whole, the ALJ determined that plaintiff retains the Residual Functional Capacity (RFC) to perform a wide range of jobs that involved lifting/carrying and pushing/pulling ten pounds occasionally and frequently, standing/walking for two hours in an eight hour day, thirty minutes uninterrupted; and sitting for six hours in an eight hour day. (Tr. 16). Upon further analysis under applicable rulings and regulations, the ALJ determined that plaintiff was less than fully credible in that her claimed symptoms, stated limitations and subjective complaints – particularly concerning the intensity, persistence and limiting effects of these symptoms – are inconsistent with the medical evidence. (Tr. 16-18). After evaluating all of the evidence in the record, including testimony of both plaintiff and a VE at the hearing, the ALJ held that plaintiff could perform the job of a production monitor (DOT #739.687-182), an unskilled job performed at the sedentary level of exertion (with 550 such positions in the statewide economy and 137,000 in the national economy), and a bench worker (DOT # 715.687-090), an unskilled job performed at the sedentary level of exertion (with 670 such positions in the statewide economy and 112,000 in the national economy). (Tr. 19). As a result, the ALJ

concluded that plaintiff is not disabled under the Social Security Act. (Tr. 20).

Plaintiff claims that the ALJ made multiple errors when he:

1. selectively read the record;
2. did not properly consider all of the plaintiff's medically determined severe impairments;
3. utilized an incorrect legal standard in reviewing the plaintiff's treating source RFC as to "paragraph B" restrictions;
4. did not appreciate the unique nature of dealing with bipolar disorder in assessing plaintiff's RFC;
5. did not find that plaintiff met listing 12.04 or 12.06;
6. did not give proper weight to the results of psychological testing conducted by Dr. Small; and
7. did not consider all of the plaintiff's impairments, the effects and side effects of her medications and the cycling of plaintiff's moods, resulting in a decision unsupported by substantial evidence.

Docket 10, p. 1.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[3] Second, plaintiff must prove her impairment is "severe" in that it "significantly limits her physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude plaintiff is

---

[1] *See* 20 C.F.R. § 416.920 (2003).

[2] *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991).

[3] 20 C.F.R. § 416.920(b) (2003).

[4] 20 C.F.R. § 416.920 (2003).

3

disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2003).[5] If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[6] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[7] If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that she cannot, in fact, perform that work.[8]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has the limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[9] even if it finds that the evidence leans against the Commissioner's

---

[5] 20 C.F.R. § 416.920 (2003). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

[6] 20 C.F.R. § 416.920(e) (2003).

[7] 20 C.F.R § 416.920(f)(1) (2003).

[8] *Muse*, 925 F.2d at 789.

[9] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

4

decision.[10] Substantial evidence, says the Fifth Circuit, is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999)(citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971)).

The ALJ concluded at step three that despite plaintiff's severe impairments, they did not meet or equal any impairment listed at 20 CFR pt. 404, Subpart P, App. 1 (2008), including Listing 1.01, 4.01 or 9.01 impairments. (Tr. 13). Plaintiff's argument focuses on the ALJ's determination at step three and his failure to find plaintiff met or medically equaled a listed impairment.

### III. DISCUSSION

The ALJ found that plaintiff suffered from severe impairments including diabetes, obesity, peripheral neuropathy, asthma, disorder of the back and hip, substance abuse disorder, personality disorder, and bipolar disorder, but found that plaintiff's allegations regarding the

---

[10]*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

extent of her limitations were not fully credible. (Tr. 12-16). After careful review of the record as a whole, the ALJ found that plaintiff has the RFC to perform work functions with certain limitations in that she can

> lift/carry and push/pull ten pounds occasionally and frequently; stand/walk for two hours in an eight-hour workday, thirty minutes uninterrupted; and sit for six hours in an eight-hour workday. She can occasionally climb, balance, stoop, crouch, kneel, and crawl. She is limited to jobs that do not require more than occasional gross manipulation or the ability to handle and work with rather small objects more than frequently. She must avoid temperature extremes, chemicals, dust, fumes, humidity, heights, and hazardous moving machinery. She is limited to jobs that do not demand attention to details or complicated job tasks or instructions, do not require close cooperation and interaction with coworkers, and require no interaction and cooperation with the general public. She retains the ability to maintain attention and concentration for minimum two hour periods at the time, accept supervision on a basic level, and adapt to changes in the workplace on a basic level.

(Tr. 10-20). He determined that plaintiffs impairments, while severe, do not meet an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 13). In making this finding, the ALJ detailed his consideration of the medical evidence, as well as the records produced by plaintiff, plaintiff's own testimony, and testimony of the VE. (Tr. 10-20). The ALJ found that plaintiff was not entirely credible, noting numerous inconsistencies within evidence from plaintiff and from her ex-husband regarding her abilities and activities of daily living. (Tr. 16-18). Additionally, plaintiff's testimony was inconsistent with third-party reports relating to her abilities. *Id.*

At step three of the sequential process, plaintiff must prove by objective medical evidence that her impairment, either singly or in combination with other impairments, meets the stringent requirements set out in the listings. *Selders v. Sullivan*, 914 F.2d 614, 617, 619 (5th Cir. 1990), citing *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 891-92 (1990) (claimant bears the

6

burden of proof to show medical findings that she meets each element of the listing). The ALJ considered each of plaintiff's impairments and the corresponding listing but found that "the record evidence does not contain any diagnostic findings, signs, symptoms, or laboratory results that meet or medically equal any of the listings . . . ." (Tr. 13). The ALJ analyzed each listed impairment claimed and compared the record evidence to each listing, but ultimately found that the record evidence failed to demonstrate any listing.[11]

Plaintiff asserts that the ALJ erred as a matter of law by selectively reading the evidence. Nevertheless, it is established that the criteria for the listings are demanding and stringent, *Falco*, 27 F.3d at 160, and it is plaintiff's burden to prove that her conditions satisfy a listing. Where an ALJ merely states a summary conclusion that plaintiff's impairments do not meet or equal any Listed Impairment, without identifying the relevant listed impairments, discussing the evidence, or explaining his reasoning, the decision is not supported by substantial evidence. *Burnett v. Commissioner of Social Sec.*, 220 F.3d 112, 119-20 (3rd Cir. 2000); see also *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As the *Clifton* Court stated, "[s]uch a bare conclusion is beyond meaningful judicial review." *Clifton* at 1009. This is not the case here.

The ALJ found plaintiff not disabled after considering all of plaintiff's alleged impairments to the extent to which they could be accepted based upon the entire record, including the objective medical evidence, medical opinion evidence and testimony provided by

---

[11] The ALJ considered whether plaintiff's impairments meet the listing requirements of 1.02, 3.03, 9.08, 9.09, and 11.14, and held that the plaintiff's impairments failed to meet or medically equal any of these Listings. Plaintiff, however, has failed to point to any evidence in the record to support a finding that the ALJ's decision as to these Listings was not supported by substantial evidence.

7

plaintiff and a VE at the hearing. Plaintiff finds fault primarily with the ALJ's finding that the

"B" and "C" criteria were not present under 12.04.[12] The Listing states, in pertinent part:

> 12.04 <u>Affective Disorders</u>: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. . . .
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

Under the requirements of the Listing, then, plaintiff must demonstrate that she has *both*

medically documented bipolar syndrome as required by Paragraph A

>     AND
> B. Resulting in at least two of the following:
>    1. Marked restriction of activities of daily living; or
>    2. Marked difficulties in maintaining social functioning; or
>    3. Marked difficulties in maintaining concentration, persistence, or pace; or
>    4. Repeated episodes of decompensation, each of extended duration . . . .

Dr. McGee, plaintiff's treating physician, categorized plaintiff's functional limitations, ability to

make performance and personal-social adjustments as "fair." Plaintiff alleges that the ALJ

misunderstood the "B" criteria because he interpreted this designation to mean the plaintiff's

limitations were "moderate" instead of "marked" for purposes of the "B" criteria. (Tr. 6).

---

[12]Plaintiff does not suggest which subparagraph under § 12.04C she claims to meet, except perhaps subparagraph 1, which requires "[r]epeated episodes of decompensation, each of extended duration." She appears to believe that the ALJ's finding that plaintiff has experienced one or two episodes of decompensation (Tr. 15), in combination with evidence that her physicians changed her medication on occasion, is sufficient to support that finding that she meets the "C" criteria. The requirement of "repeated" episodes of decompensation means "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. § 12.00C(4). There is no evidence to support such a finding in the record. Nor does the fact that a physician altered medication necessarily indicative of an episode of decompensation. *See, e.g., Hutson v. Astrue*, 2009 WL 1303355 *6 (C.D. Cal. May 8, 2009) (Plaintiff's argument that an increase in medication levels was no more than articulation of "a speculative belief that this demonstrates the necessary evidence of decompensation required under the Listing."). The court is unable to discern that either subparagraphs 2 or 3 would be applicable here.

Plaintiff asserts that "fair" is more akin to "marked" than to "moderate." Docket 9, p. 6.

This argument arises because the categories for assessing plaintiff's abilities for purposes of Social Security are not the same as those on the form utilized by Dr. McGee. His form identifies four categories: unlimited or very good, good, fair and poor or none. Social Security Regulations, on the other hand, speak in terms of a "five-point scale: None, mild, moderate, marked and extreme" in rating the degree of a claimant's limitation; "[t]he last point on [the] scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." 20 C.F.R § 404.1520a(c)(4). Listing 12.04 requires that plaintiff prove **marked** severity of limitations in at least two of the paragraph "B" criteria. Plaintiff cites a Tenth Circuit case, *Cruse v. USDHHS*, 49 F.3d 614, 618-19 (10th Cir. 1995), for the proposition that "fair" on the Medical Assessment of Ability to Do Work-Related Activities (Mental) submitted by Dr. McGee (Tr. 274-76) correlates to "marked" in the Listing. Docket 9, p. 6. However, at least one court in the Fifth Circuit has had the opportunity to accept this rationale, but has chosen not do to so. See *Martinez v. Barnhart*, 2003 U.S. Dist. LEXIS 21802 (W.D. Tex. Sept. 26, 2003). The *Martinez* Court held that

> [t]o the extent that the ALJ's decision is based solely on defining 'moderately limited' as the ability to function satisfactorily, because there is no clear Fifth Circuit definition or case law on the matter, the Court cannot conclude the ALJ relied on an incorrect standard. The court declines to   The Social Security regulations do not define "moderate."

2003 U.S. Dist. LEXIS 21802 at *34. In analyzing *Cruse*, the *Martinez* court noted "the term 'fair' requires a review of the entire record in order to judge whether the balance tips toward functional ability or toward disability." *Id.* at *35.

The ALJ in the instant case conducted a review of the entire record and concluded that

9

the balance tipped toward functional ability. The ALJ relied not only on Dr. McGee's report, but also on the State Agency physician's Psychiatric Review Technique, assessments by Dr. Charles Small and the substantial record evidence to determine that the plaintiff "experiences moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and one or two episodes of decompensation." (Tr. 15). He noted that plaintiff "reported performing all activities of personal grooming, many household chores, cooking and shopping." *Id.* The ALJ concluded that "[b]ecause the claimant's mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, the 'paragraph B' criteria are not satisfied." This court declines to adopt the analysis of *Cruse* and its progeny and finds that the ALJ properly applied the law and had substantial evidence to make this determination.

Plaintiff further faults the ALJ for not evaluating listing 12.06(c), which requires "complete inability to function independently outside the area of one's home." The court finds this alleged deficit to be harmless error as the plaintiff has fallen far short of establishing that she is so limited. In fact, even though plaintiff faults the ALJ for not conducting an evaluation of her disability under 12.06(c), she herself has not referred the court to any evidence in the record to support the listing.

Last, plaintiff alleges that because the ALJ did not consider all of her impairments, his opinion was unsupported by substantial evidence. This simply does not seem to be the case. In his evaluation of the plaintiff's impairments, the ALJ noted that the plaintiff related right hand numbness but found that the "examinations revealed essentially normal limits." (Tr. 12). He further considered the fact that she had "anxiety, depression, low energy, poor concentration,

occasional feelings of hopelessness and helplessness, disrupted sleep . . . ." *Id.* Additionally, the ALJ found plaintiff's diabetes to be a severe impairment. *Id.* That finding would obviously include all of the symptoms plaintiff relates to her diabetes such as vision loss, numbness, pain in feet, etc. The ALJ clearly considered all of plaintiff's impairments and found many of them to be severe but concluded, nonetheless, that plaintiff was not disabled. This argument is without merit.

## IV. CONCLUSION

After diligent review, the court holds that the ALJ's decision was supported by substantial evidence and must be affirmed. A final judgment in accordance with this memorandum opinion will issue this day.

SO ORDERED, this, the 3rd of August, 2010.

   /s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE